```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

------------------------------------------x
UNITED STATES OF AMERICA,                 :
                                          :
    Plaintiff,                            :    17 Cr. 675 (JSR)
                                          :
  -v-                                     :    ORDER ON MOTION FOR
                                          :       RESTITUTION
CLIFFORD MOSS,                            :
                                          :
    Defendant.                            :
                                          :
------------------------------------------x

JED S. RAKOFF, U.S.D.J.

    On October 4, 2017, Clifford Moss pleaded guilty to six offenses in connection with several unlawful bribery and kickback schemes related to business dealings with two union chapters controlled by the Genovese crime family. As relevant here, beginning in approximately 2006, Moss began selling insurance annuities to the Funds. Steven Arena, a "made member" of the Genovese crime family, initially facilitated the transactions. In return, Moss paid to Arena and, later, Frank Cognetta, the secretary/treasurer of a union local, approximately half of the commissions he received from the insurance companies that issued the annuities. See Trial Tr. 108:14-21, 112:19-22, 137:23-138:4, United States v. Giovinco, 18-cr-14 (JSR).

    On July 29, 2020, the Court sentenced Moss to time served and ordered him to forfeit $1.839 million, an amount that included the commissions Moss received from the scheme involving selling insurance annuities to the Funds. See ECF No. 12.

1

Before the Court is the motion of third-party movant the Board of Trustees of the Wine, Liquor and Distillery Workers Union Local 1-D ("Local 1-D") Major Medical Plan ("MMP"), the Local 1-D Pension Fund (the "Pension Fund"), and the Local 1-D Severance and Retirement Fund (the "Severance Fund") (collectively, "the Funds") for an order of restitution against Moss in the amount of $855,000. ECF No. 15. For the reasons set forth below, the Funds' motion for restitution is denied.

**BACKGROUND**

From at least 2006 to 2015, Moss operated an insurance brokerage and financial advisory business, Clifford Moss Wealth Advisory. He made unlawful kickback and bribe payments to Arena and officers of Local 1-D and to officers of another union, the Liquor Salesmen's Local Union 2-D ("Local 2-D"), in exchange for Local 1-D and Local 2-D benefit plans' purchase of various financial products through Moss. Beginning in approximately 2006, Arena facilitated Moss' sale of insurance annuities to Local 1-D and Local 2-D. Local 2-D and its benefit plans are not seeking restitution in this action.

Moss paid Arena a kickback of approximately $360,000, which Moss understood Arena would share with union officials Salvatore Cognetta and Vincent Fyfe. But Arena kept much of the money, which soured Moss's relationship with the union officials. See Trial Tr. 136:5-12, United States v. Giovinco, 18-cr-14 (JSR). Following Salvatore Cognetta's death in 2011, Moss agreed with Frank Cognetta, who had become the new

2

secretary/treasurer of Local 1-D, that Moss would sell insurance annuities to the Plans in exchange for bribe and kickback payments. See id. at 137:4-138:7. A forensic accountant retained by the Funds has calculated that, during the relevant period, Moss received a total of roughly $855,000 in commissions related to annuities purchased by the Funds. ECF No. 15 at 5.

Moss subsequently entered into a cooperation agreement with the Government. Pursuant to that agreement, he waived his right to be charged by indictment and pleaded guilty to six offenses: one count of conspiracy to commit racketeering, in violation of 18 U.S.C. § 2962(d); three counts of conspiracy to commit honest service fraud, in violation of 18 U.S.C. § 1349; and two counts of bribery affecting an employee benefit plan, in violation of 18 U.S.C. § 1954 and 2. See ECF Nos 1, 2.

There is no dispute that the insurance annuities Moss sold the Funds are legitimate insurance products. There also appears to be no dispute that the annuities performed well and earned the Funds a positive return on investment. ECF No. 17 at 3; Def's Letter Mem. at 2. The commissions Moss received were paid by the insurance companies, not the Funds. But the Funds argue that they would not have invested in these insurance annuities at all had it not been for Moss's scheme. See ECF No. 18 at 2. The Funds claim they would have invested in other, "liquid and cost-efficient vehicles." Id. at 1. Second, the Funds argue that because they invested with Moss, they paid "inflated

3

investment fees greater than amounts they otherwise would have to pay, if the commissions had not been collected by Moss." ECF No. 16 at 5. Last, the Funds contend that because they have a potential civil cause of action against Moss and his coconspirators under the Employment Retirement Income Security Act of 1974, as amended (ERISA), they may seek restitution in this Court to avoid unnecessary delays in recouping what they believe are their losses. Id. at 6.

The Government declines to endorse the Funds' motion, ECF No. 17, and Moss opposes it, Def's Letter Mem. at 2-3. The Government argues both that the Government cannot prove the Funds suffered pecuniary loss and that, even if it could, the Funds have not proposed a sound methodology to reasonably approximate the amount of the loss. ECF No. 17 at 1. Both the Government and Moss aver that Moss did not set or negotiate the terms of the commissions he was paid, and the amounts of commissions were not related to changes in the value of the Funds' investments. ECF No. 17 at 2; Def's Letter Mem. at 2.

## LEGAL STANDARD

The Mandatory Victim Restitution Act (MVRA), 18 U.S.C. §3663A et seq., provides in pertinent part that for an "an offense against property . . . including any offense committed by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), where an "identifiable victim or victims has suffered a pecuniary loss," id. § 3663A(c)(1)(B), the sentencing court "shall order, in addition to ... any other penalty authorized by law, that the defendant make restitution to the victim

4

of the offense." Id. § 3663A(a)(1). See also United States v. Finazzo, 850 F.3d 94, 117 (2d Cir. 2017) (explaining that restitution is mandatory for crimes committed by fraud or deceit). The statute includes limited exceptions when the number of victims is so large, or the issues of fact related to the cause and amount of victims' losses so complex, as to frustrate the purposes of restitution. See 18 U.S.C. § 3663A(c)(3).

The MVRA defines a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). Because restitution is a compensatory remedy and the MVRA limits the amount of restitution to the victim's pecuniary loss, a district court's "restitution order must be tied to the victim's actual, provable loss." United States v. Zangari, 677 F.3d 86, 91 (2d Cir. 2012); accord United States v. Marino, 654 F.3d 310, 319-20 (2d Cir. 2011); United States v. Boccagna, 450 F.3d 107, 113 (2d Cir. 2006) ("Criminal restitution . . . is not concerned with a victim's disappointed expectations but only with his actual loss"). When calculating the actual amount of the loss is difficult, victims seeking restitution must provide "a reasonable approximation of loss supported by a sound methodology." United States v. Gushlak, 728 F.3d 184, 196 (2d Cir. 2013). The Second Circuit has expressly ruled out at least one methodology relevant here: "[A] sentencing court ordering restitution under the MVRA may not substitute a defendant's ill-gotten gains for the victim's actual

5

losses." Zangari, 677 F.3d at 92-93. But where "there is a direct correlation between gain and loss ... the defendant's gain can act as a measure of -- as opposed to a substitute for -- the victim's loss." Id. at 93; accord Finazzo, 850 F.3d at 117.

The Funds must therefore prove that they are victims within the meaning of the statute and that they suffered pecuniary loss. If the amount of the loss is difficult to calculate, the Funds must offer a sound methodology for reaching a reasonable approximation.

## ANALYSIS

It is clear that the Funds are victims of Moss's crimes. They had the right to receive his honest services, and his criminal conduct denied them the exercise of that right. See ECF No. 17 at 1. But the Funds have not demonstrated by a preponderance of the evidence that they suffered pecuniary harm because of Moss's crimes.

The Funds expressly disclaim the argument that they are seeking restitution because they lost the opportunity to invest in other products that would have produced higher returns, ECF No. 18 at 2; see also ECF No. 17 at 3. But they nevertheless allege that they would not have purchased the insurance annuities Moss was selling but for his scheme. The Funds offer no evidence in support of their claim that they would have invested instead in "liquid and cost-efficient vehicles," ECF No. 18 at 1. Nor have the Funds substantiated the allegation that were it not for the commissions Moss collected from the insurance companies, they "undoubtedly paid inflated investment

fees greater than amounts they otherwise would have had to pay," ECF No. 15 at 5. Moss received the commissions at issue from the insurance companies, not from the Funds. The amount of the commissions was not set by Moss, did not vary in relation to the performance of the annuities, and was not deducted from the value of the investments. ECF No. 17 at 3-4.

Because restitution under the MVRA is available only to those victims who suffered pecuniary loss, the Court's inquiry ends here. The Government has tellingly declined to endorse the Funds' motion, stating that it "does not believe it can meet its burden" of proving pecuniary loss. ECF No. 17 at 3. Even if there were a pecuniary loss, calculating the amount of Moss's commissions is not a sound methodology for reaching a reasonable approximation of the Funds' loss. As in Zangari, even if the Funds suffered pecuniary loss, "this is not a case in which a direct correlation exists between the victims' losses and the defendant's gain such that the latter can be used as a measure of the former." 677 F.3d at 94 (2d Cir. 2012).

The Court addresses briefly the Funds' remaining argument, that because they have a cause of action against Moss under ERISA, they are "entitled to restitution for their substantial monetary losses without having to resort to civil litigation," ECF No. 15 at 6. While it is not for the Court to pass on the details of the Funds' putative ERISA claim, the Funds have conflated two substantially different types of proceedings. Whether or not Moss has civil liability to the Funds

7

under ERISA is a separate question from whether adequate evidence supports the entry of an order of restitution in a criminal case.

## CONCLUSION

For the foregoing reasons, the Court finds that the Funds are not entitled to restitution as a victim under the MVRA. Accordingly, their request for restitution is DENIED.

SO ORDERED.

Dated:   New York, NY

_7/29_, 2021

_____
JED S. RAKOFF, U.S.D.J.